UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LYNDA BRYAN and VIRGIL § 
GUNTER, §
 §
   Plaintiffs, §
 §
v. § CIVIL ACTION NO. 3:15-CV-2616-B
 §
CITY OF DALLAS, §
 §
   Defendant. §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant City of Dallas's Rule 12(b)(6) Motion to Dismiss (Doc. 12).

For the following reasons, the Court **GRANTS** Defendant's motion and **DISMISSES** the claims in

Plaintiffs' First Amended Complaint (Doc. 10) **without prejudice**.

## I.

## BACKGROUND[1]

This is a civil rights case brought under 42 U.S.C. § 1983, where Plaintiffs Lynda Bryan and

Virgil Gunter seek damages from Defendant City of Dallas (the City) for allegedly depriving them

of their constitutional rights.

According to Plaintiffs, on August 10, 2013, Lynda Bryan (Bryan) and her grandfather, Virgil

Gunter (Gunter), were violently attacked in the South Dallas/Fair Park neighborhood of Dallas,

---

[1] The Court draws its factual account from the allegations contained in Plaintiff's First Amended Complaint. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002) (noting that, when considering a Rule 12(b)(6) motion to dismiss, "all facts pleaded in the complaint must be taken as true").

Texas. Doc. 10, Am. Compl. ¶ 6. At 2:06:12 p.m., Gunter called 911 and spoke with Priscilla Guerra, who, according to Plaintiffs, could hear yelling and crying in the background. *Id.* ¶ 7. Gunter and Guerra spoke for three minutes, until the call ended at 2:09:40 p.m. *Id.* At some point thereafter, Bryan and "the 'mail man'" made additional calls to 911, and operators told each that help was on the way. *Id.* ¶¶ 7, 9d. The City failed to dispatch emergency assistance until 2:18:13 p.m., however, about twelve minutes after Gunter's initial call. *Id.* Plaintiffs allege that this was not a prompt response, given that 911 generally responds to critical calls within six minutes but here took twelve before even *dispatching* assistance.[2] *Id.* ¶ 9a. They say this tardiness caused them to suffer further harm. *Id.* ¶ 8.

Plaintiffs now sue the City of Dallas, alleging it is subject to municipal liability under 42 U.S.C. § 1983 (section 1983) for: (1) violating their constitutional rights to due process and equal protection based on race, gender, and socioeconomic status, *id.* ¶¶ 10a, 16; (2) violating their constitutional right to equal protection based upon their membership in a "class of one," *id.* ¶ 16, and (3) failing to adequately train and supervise its employees. *Id.* ¶¶ 10b, 16.

The City has moved to dismiss each of Plaintiff's claims, arguing that (1a) their section 1983 due process claim fails because Plaintiffs failed to allege a "special relationship" with the City, as required by law, and that (1b) their section 1983 equal protection based on race, gender, and socioeconomic status claim fails because they failed to plead facts demonstrating an official municipal policy existed and, even if they had, they failed to plead facts demonstrating the policy "was the

---

[2] The Court cannot tell (1) whether "responds" means 911 dispatching assistance, or assistance actually arriving at the scene, and (2) whether the six minutes the City took to respond is measured in reference to the start or end of Gunter's call. The twelve minutes the Court refers to, however, is measured from the start of Gunter's call.

'moving force' and actual cause of a deprivation of their constitutional right to equal protection," Doc. 12, Mot. to Dismiss at 7–8, 11; (2) their section 1983 "class of one" claim should be dismissed because they failed to plead facts demonstrating the personal animus required in police discrimination cases was present, *id.* at 17–18; and (3) their section 1983 failure to train claim should be dismissed because their allegations are conclusory and insufficient to support an inference of liability. *Id.* at 18–19.

Plaintiffs have since responded to Defendant's motion. Doc. 15, Pls.' Resp. The time for the City's reply having passed, the Court now reviews the Motion.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

Plaintiffs allege that the City is subject to municipal liability under 42 U.S.C. § 1983 for: (1a) violating their constitutional right to due process by "fail[ing] to provide constitutionally adequate protection and assistance to [them] during their pleas for assistance," Doc. 10, Am. Compl. ¶ 10, and (1b) violating their constitutional right to equal protection based on race, gender, and socioeconomic status by maintaining a policy, practice, and custom to delay and/or fail to provide assistance to victims who suffered domestic violence, are racial minorities, and/or were attacked in socioeconomically deprived areas, *id.* ¶¶ 10a, 16; (2) violating their constitutional right to equal protection based upon their membership in a "class of one," *id.* ¶ 16; and (3) failing to adequately train and supervise its employees by "fail[ing] to properly train or discipline [them] regarding responding to [911] calls and conducting an investigation of calls." *Id.* ¶¶ 10b, 16. Plaintiffs allege all of these failures caused the City to fail to promptly dispatch emergency assistance, which in turn caused them to suffer further harm at the hands of their attacker. *Id.* ¶ 8. Accordingly, Plaintiffs seek to hold the City liable under section 1983 on all three of the above claims.

In moving to dismiss, the City argues that Plaintiffs' allegations are insufficient to support any

municipal liability claim, and so it moves to dismiss each, arguing that: (1a) Plaintiffs' section 1983 due process claim fails because they did not allege the requisite "special relationship" between a governmental entity and a plaintiff and (1b) Plaintiffs' section 1983 equal protection based on race, gender, and socioeconomic status claim fails because Plaintiffs did not plead facts demonstrating an official municipal policy existed and, even if they had, they failed to plead facts demonstrating that the policy "was the 'moving force' and actual cause of a deprivation of their constitutional right to equal protection," Doc. 12, Mot. to Dismiss. at 7–8, 11;[3] (2) their section 1983 "class of one" claim should be dismissed because they "fail[ed] to plead facts sufficient to permit a reasonable inference of particularized discrimination," *id.* at 17; and (3) their section 1983 failure to train claim should be dismissed because their allegations are conclusory and insufficient to support an inference of liability. *Id.* at 18–19. The Court analyzes each claim in turn.

A.     *Municipal Liability Under Section 1983 for Violating Plaintiffs' Due Process and Equal Protection Rights*

The City first moves to dismiss Plaintiffs' section 1983 due process and equal protection based on race, gender, and socioeconomic status claims. The Court construes these as two separate claims. The City argues that the Court should dismiss the former because Plaintiffs have failed to allege the "special relationship" required in order to impose a duty upon a local government. *Id.* at 8. The City's argument for why the Court should dismiss the latter claim is somewhat more nuanced. Essentially, the City contends that Plaintiffs have not pled sufficient facts to meet either the second

---

[3] Though the first element of liability on a section 1983 municipal liability claim is that a plaintiff identify a final policymaker, as addressed below, the City does not seek dismissal based on this element, and so the Court will not analyze it in depth, focusing instead on the second element: whether Plaintiffs adequately pled facts demonstrating an official policy. *See* Doc. 12, Mot. to Dismiss 7; *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010).

or third elements of a section 1983 municipal liability claim—that an "official policy" exists, and that there was a constitutional violation whose "moving force" was such a policy. Doc. 12, Mot. to Dismiss 7–17. The City couches this argument in slightly different language, though, informing the Court that they "will focus upon Plaintiffs' failure to plead sufficiently (1) the customs they attempt to allege, (2) facts showing that the City's final policymakers were aware of the customs that Plaintiffs attempt to allege, and (3) facts showing that the City's final policymakers were deliberately indifferent to a known or obvious risk of the harms that Plaintiffs allege." *Id.* at 7–8. Examining the briefing, the Court finds that the City's first point goes towards the second element of a municipal liability claim: whether an "official policy" exists, discussed further below, and that the City's second and third points go toward the third element: whether there is a constitutional violation whose "moving force" was such a policy. Because the Court determines that Plaintiffs have failed to adequately plead the second element of a municipal liability claim, though, it need not reach the third. Accordingly, it does not address the City's second and third points. But first, the Court takes up Plaintiffs' section 1983 due process claim.

1.    The Section 1983 Due Process Claim

The City moves to dismiss Plaintiffs' section 1983 due process claim on grounds that Plaintiffs' allegation—that the City "failed to provide constitutionally adequate protection and assistance to [them] during their pleas for assistance"—is a nonactionable due process claim. *Id.* at 8–10 (citing Doc. 10, Am. Compl. ¶ 10). The Court agrees. As the City points out, in order to maintain a due process claim under section 1983, there must be a "special relationship" between the governmental entity and plaintiff. Doc. 12, Mot. to Dismiss 8 (citing *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004)). Plaintiffs have alleged no such relationship here. Accordingly, the

Court **GRANTS** Defendant's Motion to Dismiss Plaintiffs' section 1983 due process claim and **DISMISSES** that claim. The Court moves on to consider whether Plaintiffs' section 1983 equal protection claim survives.

2.     The Section 1983 Equal Protection Claim

"[A] local government may not be sued under [section] 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Instead, municipal liability under section 1983 "results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy." *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001). A claim for municipal liability under section 1983 has three elements: (1) "a policymaker"; (2) "an official policy"; and (3) "a violation of constitutional rights whose moving force is the policy or custom." *Zarnow v. City of Wichita Falls*, Tex., 614 F.3d 161, 166 (5th Cir. 2010). As discussed below, Plaintiffs fall short on the second element, and so the Court must dismiss their claim.

1.     Policymaker

Municipal liability first requires that "an official policymaker with actual or constructive knowledge of the constitutional violation [has] acted on behalf of the municipality." *Id.* at 167. "A policymaker is 'one who takes the place of the governing body in a designated area of city administration.'" *Id.* (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). "He or she must 'decide the goals for a particular city function and devise the means of achieving those goals.'" *Id.* (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)).

Here, in their amended complaint, Plaintiffs identify Dallas Mayor Mike Rawlings (Rawlings) and Chief of Police David Brown (Brown) as final policymakers. *See* Doc. 10, Am. Compl. ¶ 11. Though the City disputes that these two individuals are final policymakers under section 1983, it

- 7 -

makes clear that it is not seeking dismissal based on this alleged deficiency. Doc. 12, Mot. 7 to Dismiss. Accordingly, the Court bypasses this element and moves on to consider whether Plaintiffs have satisfactorily alleged that an official policy exists. *Zarnow*, 614 F.3d at 166.

    2.    <u>Policy</u>

The City moves to dismiss Plaintiffs' complaint on grounds that they "fail[ed] to plead sufficiently . . . the customs they attempt to allege." Doc. 12, Mot. to Dismiss 7–11. Plaintiffs respond by reiterating some of the facts in their complaint. *See* Doc. 15, Pls.' Resp. 2–3. Examining Plaintiffs' complaint, the Court agrees with the City and finds that Plaintiffs have not made sufficient allegations on this point.

In order to adequately plead a municipal liability claim, one must indeed demonstrate that "the allegedly unconstitutional action constitutes a 'custom or policy' of the municipality." *Zarnow*, 614 F.3d at 168. There are two kinds of "official policies" in the section 1983 context: (1) "a policy statement formally announced by an official policymaker," or (2) a "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 168–69 (quoting *Webster*, 735 F.2d at 841). To show that a custom or policy exists, a plaintiff must show either "a pattern of unconstitutional conduct . . . on the part of municipal actors or employees" or that "a final policymaker took a single unconstitutional action." *Id.* at 169 (emphasis omitted). For purposes of a section 1983 claim, a formal policy statement is "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Webster,* 735 F.2d at 841.

As a preliminary matter, the Court finds that, because Plaintiffs plead no facts suggesting Rawlings, Brown, or any other lawmaking officer or official to whom a lawmaker has delegated policy-making authority "officially adopted and promulgated" the purported policy, Plaintiffs must point to a persistent pattern of widespread conduct in order to demonstrate an official policy is indeed present.

The City contends Plaintiffs fail in this regard, arguing that, though Plaintiffs "assert that there is a custom of providing less police protection to certain classes of crime victims," they "provide no facts that permit a reasonable inference of a persistent and widespread City practice of discriminatory treatment of disfavored classes." Doc. 12, Def.'s Mot. to Dismiss at 10–11.[4] Examining Plaintiffs' amended complaint, the Court agrees.

Under *Zarnow,* Plaintiffs may establish that a practice is so widespread and persistent that, even though not officially authorized, it is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow,* 614 F.3d at 168–69 (quoting *Webster,* 735 F.2d at 841). But while it is true that "[a]n official policy or custom can be gleaned from . . . public acknowledgments of failure on the part of [a] City[,] couple[d] with assertions by various Individual Defendants[5] that they were simply doing as they were taught and trained," there is not enough here

---

[4]  The City also suggests that Plaintiffs allegations regarding the Tonyita Hopkins letter, discussed below, "[are] irrelevant because [they] relate[] solely to a due process claim for the denial of police services, not to an equal protection claim for selective denial of police services." Doc. 12, Mot. to Dismiss at 11. But that letter factored heavily into a district court's analysis on whether plaintiffs in another case sufficiently alleged an "official policy" with respect to a 1983 equal protection claim. *See Cook v. City of Dallas*, 3:12-CV-3788, 2013 WL 11084496. Accordingly, the Court finds it relevant here, too—though it remains aware of the fact that Plaintiffs did not actually attach that letter to their complaint—and thus disagrees with the City on this point.

[5]  Or, here, non-party 911 dispatchers.

- 9 -

for the Court to glean such a policy. *Cook v. City of Dallas*, 3:12-CV-3788, 2013 WL 11084496, at *8 (N.D. Tex. Oct. 28, 2013).

In *Cook v. City of Dallas*, the plaintiffs offered a letter from 911 dispatcher Tonyita Hopkins (Hopkins) "expound[ing] [up]on her training[,] in an effort to demonstrate how she acted appropriately and yet still was involved in a [911] urgent response lasting roughly 50 minutes." *Id.* They also highlighted "several public acknowledgments of institutional failings that led to the incident," including (1) a remark from Brown at a community meeting that "[the 9–1–1 operator] obviously failed . . . and it cost the life of Ms. Cook"; (2) comments from Rawlings on a news program where he said "we all did [fail Ms. Cook], "our safety net wasn't there for her," and that he himself "failed each of the 26 victims of domestic violence in Dallas in 2012"; and, finally, (3) Rawlings' comments at a later news conference, where he said "we've got to redouble our effort to make sure we re-prioritize those [domestic violence suspects] warrants," and that he was "asking that these warrants be given the highest priority, along with murders in this city." *Id.* at 3, 8 (citations omitted). The district court determined that, together, Hopkins' letter and the officials' acknowledgments of institutional failure were sufficient to "allege facts evincing informal policies that satisfy *Webster*," albeit barely. *Id.* at 8 (citations omitted). The *Cook* Court made clear that the plaintiffs' "pleadings in favor of an official policy [we]r[e] somewhat tenuous," but held that, "[g]iven the egregious nature of the underlying facts in conjunction with the statements made by the alleged policymakers and actual individual state actors involved in the [911] response," the plaintiffs' "Second Amended Complaint inche[d] past the Rule 12(b)(6) threshold to survive dismissal." *Id.* at 8 n.6.

The Court cannot say the same here. On one hand, Plaintiffs reference the same note from Hopkins, *see* Doc. 10, Am. Compl. ¶ 10(b),[6] along with similar acknowledgments of institutional failure: that (1) Rawlings and . . . Brown made "[p]ublic statements . . . in connection with similar cases," meaning, the Court assumes, cases where 911 dispatchers failed to promptly respond to calls involving domestic violence, racial minorities, or socioeconomically deprived areas; (2) Brown decided to "fire[] or suspend[] [911] operators in high profile cases for failure to handle [911] calls in a constitutionally required manner"; (3) Rawlings made "stat[ements] in a public press release that he would let the police chief evaluate police practices and get back to him . . . with a full report"; (4) "the Dallas Police Department confirmed several incidences in which the department had misplaced documents related to family violence cases"; (5) the Police Chief decided to "implement[] a special task force to investigate previously ignored domestic violence cases"; and (6) Rawlings issued a "press [release regarding] the city's plans to step up its efforts to address domestic violence against women." Doc. 10, Am. Compl. ¶¶ 11–12. That being said, the Court finds the *Cook* plaintiffs' allegations about the City's admitted institutional failures were far more specific than those Plaintiffs make here. The *Cook* plaintiffs offer dates for each incident they reference, *see Cook*, 2013 WL 11084496, at *3. Plaintiffs here do not. *See generally* Doc. 10, Am. Compl. The *Cook* plaintiffs actually attached the Hopkins letter to their complaint. *See Cook v. City of Dallas*, No. 12-CV-03788, Dkt. No. 62 (N.D. Tex. March 22, 2013). Plaintiffs here only reference it.

Accordingly, though the *Cook* complaint "inche[d] past the Rule 12(b)(6) threshold to survive dismissal," *Cook*, 2013 WL 11084496, at *8, Plaintiffs' complaint here falls short of that line,

---

[6] It is not entirely clear whether Plaintiffs reference this letter to support their section 1983 due process and equal protection claims or their section 1983 failure to train claim. Thus the Court will construe Plaintiffs' allegations liberally and assume they marshal it to support both.

albeit by a similarly short measure. Thus Plaintiffs have not adequately pled the second element of a section 1983 municipal liability claim. There being no official policy pled, then, the Court cannot, and need not, analyze the third element of the claim—whether the policy or custom was the moving force of the violation of Plaintiffs' constitutional rights.

Therefore the Court **GRANTS** Defendant's Motion and **DISMISSES** Plaintiffs' section 1983 municipal liability claim **without prejudice.**

B.      The "Class of One" Claim

The City also moves to dismiss Plaintiffs' section 1983 "class of one" claim because Plaintiffs have failed to plead facts demonstrating the personal animus required in police protection cases was present. Doc. 12, Mot. to Dismiss at 17; Doc. 10, Am. Compl. ¶ 16d. Plaintiffs do not directly address this argument in their response. *See* Doc. 15, Pls.' Resp. 3.

Generally, a plaintiff may assert "an equal protection claim based on a 'class of one.'" *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 823–24 (5th Cir. 2007). To do so, he must show that "(1) he or she was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment." *Id.* (citation omitted). This sort of claim can exist alongside equal protection claims based on membership in a protected class, since the Federal Rules permit plaintiffs to plead alternative, inconsistent claims. *See* Fed. R. Civ. P. 8(d)(2). That being said, Plaintiffs have not asserted a plausible "class of one" claim here.

Plaintiffs allege that (1) they "called out to the city for help as they were being beaten (and raped as to Lynda Bryan) by their attacker"; (2) "other individuals called to report the ongoing assault as well"; (3) police told Bryan and others help was on the way when it was not; (4) "Defendant was slow to even dispatch help to the location of the crime[,] despite being made aware

of the nature and location of the ongoing attack; (5) "[t]here exists no rational basis for Defendant's refusal or failure to send aid to Plaintiff when it would have done so for other like individuals"; (6) the City failed and/or refused to provide records requested; (7) the police department has authored false and incorrect incident accounts; and (8) Bryan "is informed and believes that, due to a relationship between her attacker and the police department, she was not aided in a timely manner and the criminal prosecution of her attacker has been stalled." Doc. 10, Am. Compl. ¶¶ 9d, 16d.

None of the above allegations demonstrate that "the defendant deliberately sought to deprive [Plaintiffs] of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position," which is what is required for a "class of one" claim. *Mata v. City of Kingsville, TX,* 275 F. App'x 412, 415 (5th Cir. 2008) (unpublished). Plaintiffs come closest to adequately pleading their claim when they allege their attacker and the police department maintained some sort of relationship. This purported relationship, if it did indeed exist, could possibly explain the disparate treatment, but would certainly provide no rational basis for it, thereby satisfying the second element of a "class of one claim." *See Stotter,* 508 F.3d 812 (citation omitted). This allegation alone is far too sparse, however, to demonstrate that the City intentionally deprived Plaintiffs of their constitutional right to equal protection for a "reason of a personal nature unrelated to the duties of the defendant's position." *Id.* (citations omitted). To hold otherwise, the Court would have to transform *Iqbal*'s standard from "plausibility" to "possibility" and supplement Plaintiffs' allegations with the following logical leaps: (1) Plaintiffs knew their attacker by name and, in the midst of the attack, identified him—again, by name—to any of the 911 operators; (2) any of the 911 operators recognized that name; (3) any of the 911 operators had a personal relationship this individual—or, alternatively, knew that someone else in the police department did; and (4) the

operator chose to willingly abdicate his or her duties as a public servant and deprive a woman being attacked of critical emergency services in order to preserve this relationship. While the above is technically *possible,* the Court does not believe it is *plausible* in any sense of the word. Without more, then, Plaintiffs' "class of one" claim fails. The Court therefore **GRANTS** Defendant's Motion to Dismiss and **DISMISSES** Plaintiffs' "class of one" claim **without prejudice.**

C.     *Section 1983 Failure to Supervise and Train Claim*

Last, the City moves to dismiss Plaintiffs' section 1983 failure to train claim because "Plaintiffs identify no deficiencies, much less systemic deficiencies, in employee training, supervision, or discipline" and "fail to plead any facts from which the Court could rationally infer that the City's final policymakers were even aware of any systemic deficiencies in officer training, supervision, or discipline, much less that the City's final policymakers deliberately chose a deficient course of action from the alternatives available." Doc. 12, Def.'s Mot. to Dismiss 18–19; Doc. 10, Am. Compl. ¶ 15. Again, Plaintiffs do not directly address the City's argument in their response. *See generally* Doc. 15, Pls.' Resp.

"In a [section] 1983 claim for failure to supervise or train, the plaintiff must show that: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)). Showing that a municipality's training program is inadequate requires that the plaintiff "allege with specificity how a particular training program is defective." *Zarnow*, 614 F.3d at 170 (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). Plaintiffs have neither identified a particular training

program nor specified how such a program is deficient. *See* Doc. 10, Am. Compl. ¶ 15. Therefore, their failure to supervise and train claim also fails. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss and **DISMISSES** Plaintiffs' section 1983 failure to supervise or train claim **without prejudice.**

C.      *Leave to Amend*

Normally, courts will afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears that the defects are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (stating that "a court ordinarily should not dismiss the complaint except after affording every opportunity for the plaintiff to state a claim upon which relief can be granted" (internal alterations omitted)).

Here, Plaintiffs failed to plead with sufficient factual specificity their section 1983 municipal liability and "class of one" claims based upon the City's alleged failure to provide them equal protection, as well as their section 1983 municipal liability claim based upon the City's failure to adequately train and supervise its employees. Given that this is the Court's first review of their pleadings, it is proper to grant Plaintiffs leave to amend their Complaint, if they can do so in a way that overcomes the deficiencies identified in this Order.

IV.

CONCLUSION

Based on the foregoing, the Court **GRANTS** the City of Dallas' 12(b)(6) Motion to Dismiss (Doc. 12) and **ORDERS** that all of Plaintiffs' claims be **DISMISSED without prejudice**. The Court **GRANTS** Plaintiffs leave to amend their Complaint on or before **June 19, 2016**.


SO ORDERED.

SIGNED: May 20, 2016.


_____

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE